38479. LUMPKIN v. THE STATE.

SMITH, Justice.

This case comes to us by certiorari from the Court of Appeals. James Lumpkin was charged with three counts of burglary and one alternative count of theft by receiving stolen property. He appeals from his conviction on two of the burglary counts and the theft by receiving count, alleging as error two jury charges by the trial court. The Court of Appeals affirmed appellant's conviction. *Lumpkin v. State,* 161 Ga. App. 53 (289 SE2d 274) (1982). We affirm, but for

reasons different from those articulated by the court below.

1. The Court of Appeals did not address the merits of Lumpkin's claim, but held that "[i]nasmuch as appellant made no objection during the trial to any of the purported errors now enumerated and since he did not reserve his right to later object to the jury charge, he has waived his right to raise these issues on appeal." Although we agree with the result reached by the court below, we believe that its opinion incorrectly stated the law concerning procedural default by defense counsel.

The general rule in this state is that defendants in criminal cases are not required to except to the jury charge to preserve error for appeal. Code Ann. § 70-207 (a). The right to raise an erroneous charge on appeal may be lost only in certain well-defined instances, as where a defendant's tactical trial plan justifies a finding of procedural default, *State v. Stonaker,* 236 Ga. 1 (222 SE2d 354) (1976), where error in the charge is induced by the actions of defense counsel, *Edwards v. State,* 235 Ga. 603 (221 SE2d 28) (1975), or where defense counsel in response to an inquiry by the trial judge plainly states that he has no objections to the charge as given. *Jackson v. State,* 246 Ga. 459 (271 SE2d 855) (1980). None of these circumstances is present in this case.

The Court of Appeals apparently felt that the following exchange, which took place after the jury was charged and sent to the jury room, supported a finding of procedural default: "The Court: I am pretty well satisfied until I got to the verdicts. Did I ball it up in any way there? District Attorney: No sir. Appellant's attorney: No sir. Codefendant's attorney: I have no objections." We think the record is clear that the trial court was not inviting objections to his entire charge by this inquiry. The judge simply asked a question about the portion of the charge dealing with the form of the verdicts, and counsel's reply of "No sir" related only to that portion of the charge. Inasmuch as the trial court's question and counsel's response concerned only the charge on the form of the verdict and not the entire charge as given, this exchange was not a proper basis for a finding of procedural default under the rule of *Jackson v. State,* supra, and the Court of Appeals erred in so holding.

Having concluded that no procedural default occurred, we must now address the errors in the charge enumerated by Lumpkin on appeal.

2. Appellant contends that the trial judge's charge defining the offense of theft by receiving stolen property was erroneous. The court charged the jury as follows: "Now, a person commits the offense of theft by receiving stolen property when he either *receives, disposes of* or *retains* stolen property which he knows or should have known was

stolen . . ." (Emphasis supplied.)[1] Count IV of the indictment charged Lumpkin with "disposing of" stolen property only. Appellant argues that under *Walker v. State,* 146 Ga. App. 237 (246 SE2d 206) (1978), the charge was prejudicial because the jurors may have mistakenly believed that they could convict him if any of the three alternative methods of committing the offense described by the charge was established by the evidence at trial. This contention is without merit.

In the *Walker* case, the Court of Appeals held that it was reversible error "to charge that a crime may be committed by either of two methods, when the indictment charges it was committed by one specific method, and then charge the jury that they may convict the defendant if they find he committed the offense by a method other than the specific type charged in the indictment." Id. at 240. The court there correctly held that where no remedial instructions were given, the charge was erroneous as a matter of law because of a fatal variance between the proof at trial and the indictment returned by the grand jury. Id. at 244.

Appellant contends that *Walker* controls the present case. We disagree. There is one important distinction between the charge in *Walker* and the charge in this case. Here, as in *Walker,* the trial judge began his charge by reciting the statutory definition of the offense;[2] unlike the court in *Walker,* however, he then limited the jury's consideration to the specific method of committing the offense, "disposing of" stolen property, which was charged in the indictment. Referring to the defendant by name, the court painstakingly set out the elements of the crime of disposing of stolen property "as charged . . . in this indictment." This remedial charge effectively cured any possible prejudice to the appellant arising from the earlier, more general charge.

We therefore find no error. The charge, when considered in its entirety, fairly instructed the jurors that they could convict the defendant only of the offense with which he was charged in the indictment. "While the specific portion of the charge of which

---

[1] This portion of the trial court's charge followed verbatim the language of Ga. Code Ann. § 26-1806, which states that "[a] person commits theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should have known was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner . . ." This charge was proper so long as an instruction limiting the jury to consideration of the specific method charged in the indictment was also given. *Pippin v. State,* 205 Ga. 316, 323-24 (53 SE2d 482) (1949). See *Walker v. State,* 146 Ga. App. 237, 245 (246 SE2d 206) (1978).

[2] See note 1 supra.

complaint is made when torn asunder and considered as a disjointed fragment may be objectionable, when put together and considered as a whole, the charge is perfectly sound." *Flannigan v. State,* 139 Ga. App. 590, 591 (229 SE2d 98) (1976).

3. Appellant also urges as error a statement made by the trial judge during the introductory portion of his jury charge. In an attempt to simplify the multiple-count indictment for the jurors, the judge stated: "Now, there are one, two, three, four charges against one or both of these Defendants contained in this eight charge indictment. To better enable you to follow the issues that will be submitted to you with respect to [co-defendant] Broadnax and Lumpkin I have checked in the left of each of the offenses *in which they are involved* the offenses which you are concerned with." (Emphasis supplied.) Citing *Stephenson v. State,* 40 Ga. 291 (1869), appellant contends that the trial court improperly expressed an opinion as to his guilt by stating that the appellant was "involved" in the offenses for which he was on trial.[3]

We agree that the trial judge's choice of words was unfortunate. But we cannot agree that the portion of the charge objected to by appellant rises to the level of reversible error. Following the charge which appellant enumerates as error, the judge gave a lengthy remedial instruction in which he stated: "Now ladies and gentlemen, if during the course of this trial I have said or done anything that has indicated, intimated or suggested or implied in any way that I have any opinion as to ... what your verdict should be ... any such action on my part was entirely unintended and should be completely and utterly wiped out of your minds and disregarded by you in arriving at your verdict because these matters are all matters that are entrusted exclusively to you for your determination, uninfluenced by anything that I may have said or done during the course of the trial." Under the circumstances of this case, we are convinced that this corrective instruction rendered harmless any prejudice to appellant which may have resulted from the court's earlier inadvertent verbal error. *Godbee v. State,* 232 Ga. 259, 263-64 (206 SE2d 432) (1974); *Dortch v. State,* 158 Ga. App. 233 (279 SE2d 526) (1981).

*Judgment affirmed. All the Justices concur, except Weltner, J., who dissents.*

DECIDED SEPTEMBER 23, 1982.

---

[3] The appellant does not suggest that the trial court's use of the offending phrase was in any way intentional.

*David R. Montgomery,* for appellant.
*Harry N. Gordon, District Attorney,* for appellee.

WELTNER, Justice, dissenting.

I dissent, for reason that the opinion of the Court of Appeals sets out the only logical and rational rule which can pertain in a system of law where "[t]he object of all legal investigation is the discovery of truth." Code Ann. § 38-101.

Any consideration of Code Ann. § 70-207 (a) notwithstanding, this Court is free to formulate that rule of practice which will best serve the ends of justice. "The Supreme Court shall have power to hear and determine cases when sitting in a body, under such regulations as may be prescribed by it." Ga. Const. § 2-3107. *Fuller v. State of Ga.,* 232 Ga. 581 (208 SE2d 85) (1974). See, generally, *Northside Manor v. Vann,* 219 Ga. 298 (133 SE2d 32) (1963).

This we have undertaken to do over a period of some years, as is evidenced by Justice Clarke's discussion in *Jackson v. State,* 246 Ga. 459 (271 SE2d 855) (1980). See also *White v. State,* 243 Ga. 250 (253 SE2d 694) (1979), all as recognized in the majority opinion.

We have now the concept of induced error (*Edwards v. State,* 235 Ga. 603 (2) (221 SE2d 28) (1975), and *Hill v. State,* 237 Ga. 523 (228 SE2d 898) (1976)). There is also the question of waiver *vel non,* which the majority considers in its opinion, and to which I shall return. There is then the reservation procedure set forth in *Gaither v. State,* 234 Ga. 465 (216 SE2d 324) (1975), and approved in *White v. State,* supra.

Relative to the question of waiver, the majority opinion contains a colloquy between court and counsel for both defendants, and concludes that the court's inquiry ("Did I ball it up in any way there?") invited objection *only* to a specified portion of the charge. The necessity of considering the correctness of the majority's conclusion demonstrates the inadequacies of our three-headed rule. The court said, "I am pretty well satisfied until I got to the verdicts. Did I ball it up in any way there?" We must, therefore, determine the semantic implication of the final word, "there." Does it refer exclusively to that portion of the charge relative to the form of verdicts? Or is it used to indicate, as an indefinite preposition, the entire charge? The question can only be answered, in all likelihood, by knowing the emphasis placed upon the word by the court at the time of its enunciation. For example, if the court stressed the final word "Did I ball it up in any way *there*?", it might reasonably be supposed to apply to the verdicts. However, if the court placed no emphasis upon the word, tossing it in somewhat as an afterthought as is frequent in Southern speech (e.g., "Hey, there"), his inquiry would

likely include the entire charge. It is thus seen that the question of waiver *vel non* is almost impossible to determine with any degree of certainty. The present case is strong evidence of that.

Nor is there any reason, in law or logic, to continue our present rule.

The theory of a trial is that a judge will correctly educate jurors in applicable principles of law, which they will apply to the facts as found by them, and reach a verdict that speaks the truth. The function of the judge is adequately and correctly to instruct the jurors. The function of counsel is to represent their clients' interest in seeing the judge perform that function.

Nothing in law or logic would countenance the present system, wherein counsel, fully knowledgeable of an error in the charge, might evade the court's inquiry as to exceptions by repeating a magic formula which includes elements of reservation of rights.

In the first place, that rule is part of a sporting theory of justice, which thoughtful lawmakers and jurists have long ago abandoned. Secondly, it may very well be a disservice to a client to withhold comment upon an error, when such an error left uncorrected might be harmful to a client's chances before a jury. Third, that practice further engenders the prolixity and casuistry of the law which have so discredited the criminal justice system. Fourth, the practice generates appeals and habeas corpus applications by providing yet another vehicle for post-conviction quarrels which should be disposed of at the trial level.

An orderly, efficient and fair practice needs a simple, common-sense rule relative to exceptions to the charge. I suggest that it should be simply this: Where the trial court clearly extends to counsel an opportunity to present any matters relative to the sufficiency and correctness of the charge, no claimed error will be reviewed on appeal unless it shall *then and there* fairly be raised by counsel.